UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Rx USA INTERNATIONAL, INC,

                             Plaintiff,

        - against -

SUPERIOR PHARMACEUTICAL CO. d/b/a          **MEMORANDUM**
RXBAZAAR, INC. d/b/a FPP DISTRIBUTORS,       **OPINION** and **ORDER**
INC., C. ROBERT CUSICK, ROBERT
CAWTHORN, HANDEL EVANS, SHIKAR               CV 04-5074 (TCP)
GHOSH, WOLF & CO., P.C., FOLEY, HOAG
& ELLIOTT, LLP, WEST AMERICAN
INSURANCE COMPANY and OHIO
CASUALTY INSURANCE COMPANY,

                             Defendants.
------------------------------------------------------------X
PLATT, District Judge:

        Defendants Foley, Hoag & Elliott, LLP ("Foley") and Wolf & Co.,

P.C. ("Wolf") (collectively "Defendants"), move to dismiss Plaintiff Rx USA's

("Rx USA") sixteenth and seventeenth claims pursuant to Federal Rule of Civil

Procedure ("Rule") 12(b)(2) on the ground that this Court lacks personal

jurisdiction.  Foley also moves to dismiss Rx USA's sixteenth claim pursuant to

Rule 12(b)(6) on the grounds that Rx USA fails to state a claim.  For the

following reasons, Defendants' motions to dismiss are **DENIED**.


                            **BACKGROUND**

        Rx USA is a New York corporation licensed to engage in the

wholesale distribution of prescription medication in New York and throughout the

                                   1

several states. Rx USA alleges that it is an unsecured creditor of Defendant

RxBazaar ("RxBazaar"). RxBazaar is an Ohio corporation licensed to practice

wholesale and/or retail pharmacy with its principal place of business in

Cincinnati, Ohio. Foley is a law firm with its principal place of business in

Boston, Massachusetts. Foley's clients include multinational corporations and

corporations doing business in New York. Wolf is a Massachusetts based

certified public accounting and business consulting firm. Wolf is one of the

largest CPA firms in New England and has clients with offices located throughout

the United States.

Rx USA filed a complaint on November 23, 2004. In the

complaint, Rx USA claims, among other things, that in November, 2002

RxBazaar misrepresented in financial statements filed with the Securities and

Exchange Commission ("SEC") that certain pharmaceutical products that it sold

were compliant with Federal and New York regulations.

RxBazaar was a client of the Defendants. Rx USA alleges that the

Defendants aided in RxBazaar's defrauding of Rx USA because they

"intentionally, willfully, wantonly, recklessly and/or grossly negligently failed to

use reasonable and prudent care in certifying the lawful business practices of

defendant RX BAZAAR and preparing defendant RX BAZAAR's SEC form

10KSB ["the 10-K form"] and 10QSB Report" (collectively "the SEC forms").

Rx USA further alleges that it relied on these forms when extending credit to, and

otherwise doing business with, RxBazaar between November 27, 2003 and August 3, 2004.

On July 7, 2005, Foley and Wolf moved to dismiss under Rule 12(b)(2), arguing that this Court may not assert personal jurisdiction over them. Foley also filed a Rule 12(b)(6) motion, arguing that Rx USA failed to state a claim upon which relief can be granted.

## DISCUSSION

### I. **Defendants' Motion to Dismiss for Lack of Personal Jurisdiction**

A plaintiff opposing a motion to dismiss pursuant to Rule 12(b)(2) has the burden of establishing the court's jurisdiction over the defendant. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). A plaintiff may defeat these motions "by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a '*prima facie* showing' of jurisdiction." *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir. 1998) (citations omitted). Courts must accept as true all of the factual allegations set out in the complaint, and draw inferences from those allegations in the light most favorable to the plaintiff. *Alnwick v. European Micro Holdings Inc.*, 281 F. Supp. 2d 629, 637 (E.D.N.Y. 2003).

A district court has much discretion in how it decides a pretrial motion to dismiss for lack of personal jurisdiction.

> It may determine the motion on the basis of affidavits alone; or it may
> permit discovery in aid of the motion; or it may conduct an evidentiary

hearing on the merits of the motion. If the court chooses not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials. Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion.

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) (citations omitted).

Federal courts examining a motion to dismiss for lack of personal jurisdiction conduct a two-part inquiry. First, the court considers whether state law supports the exercise of jurisdiction. Second, the court determines whether the exercise of jurisdiction would be permissible under the Due Process Clause of the Fourteenth Amendment. *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997).

Rx USA asserts that this Court has personal jurisdiction over Wolf and Foley under New York Civil Practice Law and Rules ("CPLR") § 302(a)(3)(ii) (2005) and implies that this court has jurisdiction pursuant to CPLR § 301.[1] (Pl.'s Opp. Mem. Wolf ¶¶ 5-6, 20-24; Pl.'s Opp. Mem. Foley at 2-3, 7-8). Rx USA also asserts that the exercise of personal jurisdiction is permissible under the Due Process Clause. (Pl.'s Opp. Mem. Wolf at ¶¶ 15-29; Pl.'s Opp. Mem. Foley at 7-13). These arguments are assessed below.

A. 302(a)(3)(ii) (The *LaMarca* Test)

_____

[1] As this Court extends personal jurisdiction over the Defendants under CPLR § 302(a)(3)(ii) (2005), it does not reach the question of whether jurisdiction exists under Section 301.

Section 302 of the CPLR states in relevant part:

Personal jurisdiction by acts of non-domiciliaries:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: . . .

> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

> > (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

> > (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

In *LaMarca v. Pak-Mor Mfg. Co.* 95 N.Y.2d 210 (N.Y. 2000), the New York Court of Appeals developed a five-part test for determining whether Plaintiff has established jurisdiction under Section 302(a)(3)(ii).

> First, that defendant committed a tortious act outside the State; second, that the cause of action arises from that act; third, that the act caused injury to a person or property within the State; fourth, that defendant expected or should reasonably have expected the act to have consequences in the State; and fifth, that defendant derived substantial revenue from interstate or international commerce.

*Id.* at 214.

1. *Defendant committed a tortious act outside the state*

5

Neither Foley nor Wolf dispute Rx USA's assertion that the Defendants committed the alleged negligent certification of the documents outside New York.

2. *The cause of action arises from the act*

This element is also undisputed. However, Foley makes a related argument that Rx USA fails to state a cause of action. This argument will be addressed in the section discussing Foley's 12(b)(6) motion. *See infra* pt. II.

3. *The act caused injury to a person or property within the state*

Wolf argues that the injury occurred outside New York because the critical events, i.e. the alleged negligence, occurred in Massachusetts. (Wolf Reply Mem. at 5). Wolf cites *United Bank of Kuwait, PLC v. James M. Bridges, Ltd.*, 766 F. Supp. 113, 116 (S.D.N.Y. 1991), for the proposition that "the situs of a nonphysical commercial injury is where the critical events associated with the dispute took place." However, Wolf conducts the wrong analysis. Courts examining cases involving misrepresentations have held that the injury occurs where it is "immediately felt." *Hargrave v. Oki Nursery, Inc.,* 636 F.2d 897, 900 (2d Cir. 1980). In *Hargrave*, plaintiff, a New York company, bought vines from the defendant, a California company, relying on defendant's promise that the vines would be healthy. After the vines were shipped, plaintiff discovered they were diseased. *Id. at* 899. The Second Circuit held that the plaintiff's injury was "immediately felt" in New York because plaintiffs were domiciled and doing business there, and because plaintiffs were situated in New York when they

received the misrepresentations. *Id.* at 900.

Here, Rx USA's claims are based on alleged misrepresentations made by RxBazaar which were negligently certified by the Defendants. Accordingly, personal jurisdiction is best analyzed under New York's law of tortious misrepresentation. Like the plaintiff in *Hargrave,* Rx USA is domiciled and doing business in New York. (*See* Compl. ¶ 1). New York is also the state where Rx USA allegedly received the misrepresentations from RxBazaar. (*See* Compl. ¶ 1, 17). Lastly, New York is the location where plaintiff allegedly "lost sales, lost opportunity and diminution of overall good will and reputation . . ." (Compl. ¶ 121). These allegations demonstrate that the situs of the injury is New York and thus, the third element of the *LaMarca* test is satisfied.[2]

4. *Defendant expected or should reasonably have expected the act to have consequences in the state*

Rx USA argues that Wolf and Foley should have anticipated its reliance on the SEC forms. (Pl.'s Opp. Mem. Wolf ¶ 14; Pl.'s Opp. Mem. Foley at 4). The Defendants contend that they had no knowledge Rx USA would rely on these reports because Rx USA was neither a party to nor a beneficiary of any engagement between the Defendants and RxBazaar. (Foley Mem. Mot. Dismiss at 2; Wolf Mem. Mot. Dismiss at 5).

---

[2]

It is irrelevant that RxBazaar and not Wolf actually sent the alleged misrepresentations into New York (Wolf Reply Memo at 3). *See Cleopatra Kohlique, Inc.*, *v. New High Glass, Inc.*, 652 F. Supp. 1254, 1251-56 (holding that plaintiff's injury occurred in New York, even when defendant did not directly send the misrepresentations into the state).

"The test of whether a defendant expects or should reasonably expect his acts to have consequences within the state is an objective rather than subjective one." *Allen v. Auto Specialties Mfg. Co.*, 357 N.Y.S.2d 547, 550 (N.Y. App. Div. 1974). The New York Court of Appeals has held that "the defendant need not foresee the specific event that produced the alleged injury; rather it need only reasonably foresee that any defect in its product would have direct consequences within the State." *LaMarca*, 95 N.Y.2d at 215. Here, Defendants need not foresee the actual harm to Rx USA from RxBazaar's misrepresentations, they need only foresee potential harm in New York. Thus, the Defendants' repeated denials of contact with the Plaintiff are irrelevant.

Rx USA contends that Defendants could have foreseen harm in New York in part because RxBazaar did not conduct business in all fifty states; instead, the company worked only in "a small circle of states." (Transcript of Oral Argument at 26, Rx USA v. Superior Pharmaceutical Co. et al., July 15, 2005, CV-04-5074 [hereinafter Transcript]). Foley and Wolf offer a number of counter arguments, which shall be taken in turn.

(a) Foley

Foley asserts that "Plaintiff has alleged no reasonable basis on which Foley should have expected any reliance by, or other consequences to, a New York entity from its provision of legal services to RxBazaar." (Foley Mem. Mot. Dismiss at 7). In fact, Rx USA has alleged numerous facts demonstrating that Foley should have expected such reliance. First, Rx USA alleges that Foley

8

acted as a business reference for RxBazaar. (Pl.'s Opp. Mem. Foley at 3). Foley,

in essence, attested to the soundness of RxBazaar's business practices to all

potential partners, including New York partners. Courts have found such

attestations to be a valid ground for personal jurisdiction. *See BHC Interim*

*Funding L.P. v. Bracewell & Patterson*, 2003 WL 21467544, at *7 (S.D.N.Y.

June 25, 2003) (extending personal jurisdiction over defendant law firm where

firm wrote positive opinion letter concerning lender's finances and plaintiff

extended credit in partial reliance on the letter).

Second, Rx USA alleges that the 10-K forms Foley certified are

regularly relied on by investors and potential creditors in the normal course of

business. (Pl.'s Opp. Mem. Foley at 4). As RxBazaar's investors and creditors

were fixed in a small circle of states, this Court may reasonably infer that Foley

knew the reports would be relied upon by New York businesses.

(b) Wolf

Wolf argues that the only tie between it and New York is that Rx

USA happens to be a resident of New York, and that this tie is insufficient

grounds for personal jurisdiction. (Wolf Reply Mem. at 3). Wolf relies on *United*

*Bank of Kuwait,* 766 F. Supp. 113 [hereinafter *UBK*], to support its claim. In

*UBK*, defendant accountants, ("Bridges"), completed a financial audit for their

client, Southern Atlantic, in Virginia. Plaintiff, a New York business, relied on

the audit in lending $2,000,000 (two million) in funds to Southern Atlantic.

Southern Atlantic defaulted on the loan. United Bank of Kuwait then sued

Southern Atlantic and Bridges. The Court refused to extend personal jurisdiction over Bridges, holding that the accountants did not have sufficient ties to New York.

Admittedly, the facts in *UBK* are similar to the facts here. Nonetheless, *UBK* is easily distinguishable for two reasons. First, *UBK* involved publication of one audit report to the Plaintiff. *See id.* at 114. Clearly, one report given to a New York business does not demonstrate strong ties to New York. In contrast, Wolf prepared RxBazaar's SEC forms, documents which were likely relied on by many businesses. Thus, the potential for ties to New York is much greater here than in *UBK*. Second, in *UBK*, the motion to dismiss was brought after discovery, when the burden on the plaintiff to establish personal jurisdiction becomes considerably greater. For instance, allegations alone are no longer sufficient to rebut a defendant's motion to dismiss. *Id.* at 115. Here, no discovery has been taken and thus Rx USA may satisfy its burden by alleging facts that would establish jurisdiction if proved true. *See Ball*, 902 F.2d at 197; (Transcript 32).

Rx USA has alleged facts sufficient to meet its burden. For instance, Rx USA alleged that 10-K reports such as the one certified by Wolf are generally relied on by a company's commercial partners. (Pl.'s Opp. Mem. Wolf ¶ 14) Because such reliance occurs in the normal course of business, logic suggests that Wolf knew its reports would be relied on by RxBazaar's business partners. Furthermore, like Foley, Wolf acted as a reference for RxBazaar. As

noted above, courts have found such attestations valid grounds for personal

jurisdiction. *See BHC*, 2003 WL 21467544, at *7; *supra* p. 8.

>5. *Derived substantial revenue from interstate or international*
>*commerce*

For purposes of this analysis, Rx USA demonstrates that the

Defendants derive a substantial portion of their revenue from interstate and

international commerce. Courts have held that a fairly small amount of revenue

may be "substantial." *See BHC,* 2003 WL 21467544, at *18 (finding that

substantial revenue existed where 14% of the defendant's revenue came from out-

of-state sources). Furthermore, substantial revenue does not require a company to

have extensive contacts outside its home state. *See Foot Locker Retail, Inc v.*

*SBH, Inc.*, 2005 WL 91306, at *5 (S.D.N.Y. Jan. 18, 2005) (finding defendant

derived substantial revenue from interstate commerce in part because the

company's agents traveled twice a year to footwear industry shows out of state).

Here, Foley's web site states that the firm's clients include

multinational corporations such as McDonald's, General Motors, and

PriceWaterhouse Coopers. (Pl.'s Opp. Mem. Foley, Ex. D). Foley's clientele also

includes corporations which appear to be based out of state, such as United Jersey

Bank and Public Service of New Hampshire. (*Id*). Lastly, Foley has numerous

clients registered with the New York State Division of Corporations. (*Id*). Based

on these admissions, this Court finds Foley derives substantial revenue from

sources outside Massachusetts.

Wolf's web site also demonstrates that much of its business

involves interstate commerce. The web site states:

> Wolf & Company, P.C . . . [has] one of the largest financial institutions
> practices in New England . . . Many of our clients have multiple
> locations throughout the United States, while others have a foreign
> parent or subsidiary. As a member of a worldwide consortium of
> regional accounting firms, we are well equipped to help them deal with
> the issues associated with foreign operations or a multi-state reporting
> environment.

(Pl.'s Opp. Mem Wolf, Ex. A).

Wolf's web site clearly indicates it performs audits for a national

client base. Accordingly, Wolf derives substantial revenue from interstate

commerce.

Thus, this Court finds that Rx USA has met its burden of

establishing personal jurisdiction over the Defendants pursuant to 302(a)(3)(ii). It

remains to be seen whether this exercise of personal jurisdiction comports with

Due Process requirements.

B. Due Process

The Due Process Clause permits a state to exercise personal

jurisdiction over a non-resident defendant who has had "certain minimum

contacts with [the forum state], such that the maintenance of the suit does not

offend 'traditional notions of fair play and substantial justice.'" *International

Shoe v. Washington*, 326 U.S. 310, 316 (1945) (citations omitted). The Second

Circuit has held that the Due Process analysis has two components, "the minimum

contacts inquiry and the reasonableness inquiry." *Metropolitan Life Ins. v.*

*Robertson Ceco-Corp.,* 84 F.3d 560, 567 (2d Cir. 1996).

      1. *Minimum Contacts*

      The Supreme Court distinguishes between "general" and "specific" jurisdiction when conducting a minimum contacts analysis, either of which is an adequate basis for personal jurisdiction. Here, Foley demonstrates minimum contacts through general jurisdiction while Wolf demonstrates them through specific jurisdiction.

      For a defendant to have minimum contacts under a general jurisdiction analysis, the contacts must be "continuous and systematic." *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952). As noted above, Foley has numerous corporate clients who conduct business in New York. *See supra* p. 12. Furthermore, Foley recruits employment candidates in New York. (Pl.'s Opp. Mem. Foley at 8). Courts have found that minimum contacts existed in situations where companies had similar or lesser ties. *See Marine Midland Bank v. Keplinger & Associates*, *Inc.*, 488 F. Supp. 699, 704 (S.D.N.Y. 1980) (holding sufficient contacts existed where the president of defendant company had traveled to New York and the company worked with several New York corporations); *Regency Capital, LLC v. Corpfinance Intern., Inc.,* 2003 WL 22400200, at *2 (S.D.N.Y. Oct 20, 2003) (holding minimum contacts existed where corporation admitted doing business in New York on internet web site and letterhead).

      Specific jurisdiction exists where "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's

contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 413, 414-16 (1984). A single act by a corporate defendant directed at the forum may be enough to give rise to specific personal jurisdiction if the act gives rise to the claim being asserted. *Youn v. Trak*, 324 F.3d 409, 419 (6th Cir. 2003) (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

The specific act that establishes jurisdiction here is Wolf's certification of RxBazaar's 10-K reports. Rx USA alleges that Wolf had specific knowledge that these 10-K reports would be relied on by New York investors and businesses. (Pl.'s Opp. Mem. Wolf ¶ 14). Rx USA's allegation rings true because such reliance is normal business practice. Moreover, this allegation must be taken as true for purposes of this motion.

2. *Reasonableness*

In conducting an inquiry into the reasonableness of an exercise of personal jurisdiction, federal courts in this Circuit consider the following five (5) factors: (1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering substantive social policies." *Metropolitan Life*, 84 F.3d at 568 (citing, *inter alia*, *Asahi Burger King v. Rudzewicz*, 471 U.S. 462, 476-77 (1985). Rx USA argues that all five factors weigh in its favor. The Defendants fail to address these factors.

14

(a) Burden on the defendant

In evaluating this factor, it is important to note that "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Metropolitan Life*, 84 F.3d at 574. The Defendants' burdens are further eased because Boston and New York are in the same region and easily traversed. Furthermore, as both Defendants have boasted of their national client base, they are likely accustomed to working outside of Massachusetts. Thus, out of state litigation should not place an overwhelming burden on either Defendant.

(b) Forum state's interest in adjudicating the dispute

New York has a strong interest in resolving this matter because Rx USA is a resident of New York and was injured in New York. *See Photoactive Productions, Inc. v. Al-Or Int'l, Ltd.*, 99 F. Supp. 2d 281, 290 (E.D.N.Y. 2000) ("New York has an undeniable interest in providing redress to its own citizens").

(c) The remaining factors

Plaintiff has a strong interest in obtaining convenient and effective relief in New York. If Rx USA could not bring the case in this state, it would have to bring a separate action against the defendants at great cost. Furthermore, if liability were apportioned against Wolf and Foley in a separate action, there might be conflicting judgments.

In evaluating whether extending personal jurisdiction will result in the efficient administration of justice, courts will "generally consider where

witnesses and evidence are likely to be located." *Metropolitan Life*, 84 F.3d at

574. Here, this factor is a wash. While witnesses and evidence concerning the

extent of Plaintiff's damages are completely located within New York, evidence

of liability attributable to the defendants will be located in a number of states.

The final factor involves considering the policy interests of the

several states. Neither party has put forth policies that would be furthered or

undermined by permitting this case to go forward in New York. Thus, this factor

does not weigh in either party's favor.

After due consideration of these factors, this Court finds the

exercise of personal jurisdiction over Foley and Wolf is reasonable and holds that

such exercise comports with Due Process requirements.

## II. Foley's 12(b)(6) Motion

In order to prevail under Rule 12(b)(6), a defendant must show that

the plaintiff can prove no set of facts in support of its claim which would entitle

plaintiff to relief. *Alnwick*, 281 F. Supp. 2d at 637. Courts must accept as true all

of the factual allegations set out in the complaint, and draw inferences from those

allegations in the light most favorable to the plaintiff. *Id.* (citing *Desiderio v.*

*National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir. 1999). "Under

Rule 12(b)(6), a court must confine its consideration to "facts stated on the face of

the complaint, in documents appended to the complaint or incorporated in the

16

complaint by reference, and to matters of which judicial notice may be taken."

*Allen v. WestPoint Pepperell, Inc*., 945 F.2d 40, 44 (2d Cir. 1991).

Here, Rx USA claims that Foley "intentionally, willfully, wantonly, recklessly and/or grossly negligently failed to use reasonable and prudent care in certifying the lawful business practices of defendant RxBazaar. . ." (Complaint ¶ 113). Foley responds that (1) Massachusetts law governs this claim, and (2) under Massachusetts law, Rx USA fails to allege an attorney-client relationship or any other relationship giving rise to a duty Foley must perform. (Foley Reply Mem. at 8-9). These arguments will be taken in turn.

A. Choice of Law

A federal court, sitting in diversity, must look to the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). New York conducts an "interest analysis" to determine the jurisdiction which has the greatest interest in the litigation. *See Babcock v. Jackson*, 12 N.Y.2d 473, 482 (N.Y. 1963). Foley incorrectly posits that Massachusetts has the greatest interest in the litigation because the alleged tortious conduct occurred in Massachusetts. The New York Court of Appeals has ruled that a state does not have "a controlling concern or interest" merely because the tortious conduct arose there. *See id.* at 480-81. Other factors must be considered, including the location of the plaintiff's residence and the site where the injury occurred. *Id.* at 481-82. Here, Rx USA is a resident of New York and

the company also was injured there. (*See supra* pp. 1, 6-7). Thus, on balance,

New York has the greatest interest in this litigation and it is New York law which

should apply.


B.  Foley's Duties to Rx USA

      Initially, Foley correctly argues that it does not owe Rx USA a

duty under an attorney-client relationship because Foley never acted as the

Plaintiff's attorney. (Foley Mem. Mot. Dismiss at 13). Foley then incorrectly

contends that it owes no other duty to Rx USA because duties to third party

nonclients only arise if an attorney has "actual knowledge" that "a particular

plaintiff will rely" on his services. (*Id.* at 14).

      Section 552(1) of the Restatement (Second) of Torts states

that a professional has a duty to a third party to use at least due care when

giving information that the third party "justifiably relies" upon. Under

this section, there is no requirement that the lawyer have "actual

knowledge" of the third party's reliance.[3] *Id.*

      Like the Restatement, New York law has no absolute

---

[3]

Section 552(1) of the Restatement (Second) of Torts states:

> Information Negligently Supplied For The Guidance Of Others
>
> One who, in the course of his business, profession or employment, or in any
> other transaction in which he has a pecuniary interest, supplies false information
> for the guidance of others in their business transactions, is subject to liability for
> pecuniary loss caused to them by their justifiable reliance upon the information,
> if he fails to exercise reasonable care or competence in obtaining or
> communicating the information.

18

requirement that an attorney have actual knowledge of reliance by a third

party. The Second Circuit has held that an attorney may be held liable to

third parties if it is shown that he "did something either tortious in

character or beyond the scope of his honorable employment." *Newburger,*

*Loeb & Co. v. Gross*, 563 F.2d 1057, 1080 (C.A.N.Y. 1977) (citations

omitted); *see also Singer v. Whitman & Ransom*, 442 N.Y.S.2d 26, 27

(N.Y. App. Div. 1981) (holding that while generally an action against

attorney by nonclient third party will not lie, an attorney may be liable for

injuries sustained by third party as consequence of attorney's improper

conduct, such as where attorney committed a wrongful or malicious act).

Here, Rx USA accuses Foley and Wolf of tortious conduct,

alleging gross negligence as well as malicious and intentional failure to

use prudent care. (Complaint ¶¶ 113, 121). These claims are valid under

New York law. Furthermore, plaintiff has alleged a set of facts which

give support to its claim. *See supra* pp. 8-9. Thus, Rx USA has brought a

claim upon which relief may be granted.


**Conclusion**

Personal jurisdiction over Defendants Foley and Wolf is

warranted given the facts alleged in Rx USA's Complaint and the

supporting affidavits and other documents provided. Furthermore, Rx

USA asserts a valid claim against Foley.

Accordingly, Defendants' 12(b)(2) motions to dismiss for

lack of personal jurisdiction and Foley's 12(b)(6) motion to dismiss for

failure to state a claim are hereby **DENIED.**


**SO ORDERED**.

/S/_____
Thomas C. Platt, U.S.D.J.

Dated: Central Islip, New York
December 6, 2005